67 F.3d 864
 95 Cal. Daily Op. Serv. 7815, 95 Daily Journal
D.A.R. 13,423
STATE OF ALASKA, Plaintiff-Appellant,
v.
Bruce BABBITT, Secretary of the Interior; United States of
America; Evelyn Foster, Defendants-Appellees.
 No. 94-35677.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 11, 1995.
Decided Oct. 5, 1995.
 
 E. John Athens, Jr. and Paul R. Lyle, Assistant Attorneys General, Fairbanks, Alaska, for plaintiff-appellant.
 Jeffrey P. Kehne, United States Department of Justice, Washington, D.C., and Marlyn J. Twitchell, Alaska Legal Services Corporation, Anchorage, Alaska, for defendants-appellees.
 Appeal from the United States District Court for the District of Alaska.
 Before: HALL, WIGGINS, and KLEINFELD, Circuit Judges.
 WIGGINS, Circuit Judge:
 
 BACKGROUND
 
 1
 In 1962, the Bureau of Land Management ("BLM") granted the State of Alaska ("Alaska") a right-of-way, pursuant to 23 U.S.C. Sec. 317, for the construction of the George Parks Highway. The right-of-way grant was amended in 1969 to include a slightly different section of land.
 
 
 2
 In June 1971, Evelyn Foster applied for a Native allotment of land pursuant to the Allotment Act, 43 U.S.C. Secs. 270-1 to 270-3 (1970) (repealed 1971).[1] The Allotment Act allowed Alaska natives to apply for land that they had used for certain specified purposes for at least five years. 43 U.S.C. Secs. 270-1, 270-3 (1970). A section of Alaska's 1969 amended right-of-way grant runs through the parcel of land for which Foster applied. Foster's application was granted by the BLM in 1979, based on the finding that she had used the designated parcel for statutorily specified purposes since 1964.
 
 
 3
 The BLM issued another opinion in 1989 confirming its prior approval of Foster's allotment, but expressly subjecting the allotment to Alaska's original 1962 right-of-way for the George Parks Highway. The BLM reasoned that Foster's preference right to the land, which vested when she filed a valid allotment application, "related back" to 1964, the date on which she began to use and occupy the land. Thus, because Alaska had received its original right-of-way grant before Foster had begun her use of the land in 1964, Alaska's right-of-way took precedence over Foster's claim to the land under the Allotment Act. By the same reasoning, the BLM determined that Foster's preference right to the land took precedence over Alaska's other claims to the land that arose after 1964, including Alaska's 1969 amended right-of-way.
 
 
 4
 Alaska appealed the BLM's decision regarding the amended right-of-way to the Interior Board of Land Appeals ("IBLA"), which affirmed the BLM. The IBLA decision in effect voided Alaska's 1969 amended right-of-way. Alaska then filed a complaint in federal district court, seeking judicial review of the IBLA's decision. The district court dismissed the complaint, concluding that it lacked subject-matter jurisdiction over the action due to the United States' immunity from suit under the Quiet Title Act, 28 U.S.C. Sec. 2409a ("QTA").
 
 
 5
 Alaska appeals the district court's dismissal. We have jurisdiction under 28 U.S.C. Sec. 1291. As explained below, and primarily on the authority of Alaska v. Babbitt (Albert Allotment), 38 F.3d 1068, 1072 (9th Cir.1994) ("Albert "), we affirm the district court's dismissal for lack of subject-matter jurisdiction.
 
 DISCUSSION
 I. STANDARD OF REVIEW
 
 6
 The district court's determination regarding subject-matter jurisdiction is reviewed de novo, but the court's underlying factual findings "must be accepted unless clearly erroneous." Albert, 38 F.3d at 1072.
 
 
 7
 II. SOVEREIGN IMMUNITY UNDER THE QUIET TITLE ACT
 
 
 8
 Alaska asserts that the United States is not immune from its suit because the United States has waived its sovereign immunity under 5 U.S.C. Sec. 702 (Administrative Procedure Act ("APA")); 28 U.S.C. Sec. 2409a (QTA); and 43 U.S.C. Sec. 1632(a) (Alaska National Interest Lands Conservation Act ("ANILCA")). In this type of case, however, "the waiver of sovereign immunity must be found, if at all, within the QTA." Albert, 38 F.3d at 1073.[2]
 
 
 9
 Albert further compels our conclusion that the QTA's waiver of sovereign immunity does not permit Alaska's suit. The QTA's waiver expressly does not apply to "trust or restricted Indian lands." 28 U.S.C. Sec. 2409a(a). As long as the United States has a "colorable claim" to a property interest based on that property's status as trust or restricted Indian lands, the QTA renders the government immune from suit. Albert, 38 F.3d at 1076. The facts in this case are sufficiently similar to those in Albert that we feel constrained to hold that the United States has asserted the requisite "colorable claim" to the land in question here. See id. Accordingly, the Quiet Title Act does not waive the government's immunity. United States v. Mottaz, 476 U.S. 834, 843, 106 S.Ct. 2224, 2230, 90 L.Ed.2d 841 (1986); Albert, 38 F.3d at 1073.
 
 
 10
 III. ULTRA VIRES EXCEPTION TO SOVEREIGN IMMUNITY
 
 
 11
 If the BLM acted ultra vires in approving Foster's allotment (which resulted in cancellation of Alaska's 1969 right-of-way), then sovereign immunity will not bar Alaska's action for judicial review of the agency's decision. Albert, 38 F.3d at 1076. According to Alaska, the BLM's approval of Foster's allotment application was ultra vires because (1) the BLM allocated to Foster land that was not allocable under the Allotment Act, and (2) the BLM lacked the authority to consider Foster's application because the application was not timely filed. Neither argument was expressly raised in Albert.
 
 
 12
 An action is not ultra vires simply because it "is arguably a mistake of fact or law." United States v. Yakima Tribal Court, 806 F.2d 853, 859-60 (9th Cir.1986), cert. denied, 481 U.S. 1069, 107 S.Ct. 2461, 95 L.Ed.2d 870 (1987). An action is ultra vires, and results in a divestiture of sovereign immunity, only if "an employee of the United States acts completely outside his governmental authority." Id. (emphasis added).[3] We hold that the ultra vires exception does not divest the United States of sovereign immunity in this case.
 
 A. Allocation of Allegedly Unallocable Land
 
 13
 Alaska's 1969 right-of-way was granted pursuant to 23 U.S.C. Sec. 317, which provides, in part, that federal land and materials that are necessary for the construction and maintenance of highways may be "appropriated and transferred to the State highway department." 23 U.S.C. Sec. 317(b). Alaska infers from this language that the land in question was "appropriated" to it in 1969. Alaska therefore reasons that the land was no longer available for allocation to Foster when she filed her application pursuant to 43 U.S.C. Sec. 270-1, because section 270-1 only gives the BLM the authority to issue allotments of "vacant, unappropriated and unreserved" public land. (Emphasis added.) According to Alaska, the BLM acted outside its statutory authority by approving for allotment land that had already been "appropriated."
 
 
 14
 The BLM's reason for according Foster a right to the land, notwithstanding Alaska's 1969 right-of-way, was the agency's "relation-back doctrine." Under that doctrine, an allotment applicant's preference right to the land is deemed to relate back to the initiation of her use and occupancy. See Golden Valley Elec. Ass'n, 98 IBLA 203 (1987). As a result, Foster's preference right was deemed to relate back to 1964. As of that date, the disputed land was, in fact, "unappropriated," and 23 U.S.C. Sec. 317(b) therefore does not preclude a 43 U.S.C. Sec. 270-1 allotment.
 
 
 15
 Alaska's argument, at bottom, therefore must be a challenge to the relation-back doctrine itself.[4] We sympathize with Alaska's position: It constructed a highway across land granted to it in 1969--land that, according to Alaska, bore no obvious indicia of use by Foster for three months a year for berry picking--and it is now being required to compensate Foster for its use of the land because the agency has determined, based on Foster's 1971 application, that she has a right to the land that is paramount to Alaska's. Nevertheless, Albert compels us to reject such a challenge to the relation-back doctrine. See 38 F.3d at 1076 (approving the IBLA's use of the relation-back doctrine as within the agency's statutory authority).[5]
 
 B. Consideration of Foster's Application
 
 16
 Alaska also argues that the agency acted ultra vires by approving Foster's allotment application, which Alaska asserts was not timely filed. It is not clear that consideration of an untimely application would constitute ultra vires action. See Yakima Tribal Court, 806 F.2d at 860 (holding that "[a]lthough [the official] may have violated statutes and regulations regarding owner consent to right-of-way changes, those trespasses do not strip him of immunity" because his actions still were not outside his delegated power to enter reservation land and to relocate irrigation canals to serve the tribe better).
 
 
 17
 Even if we assume that such action would be ultra vires, however, we cannot find that the ultra vires exception to sovereign immunity applies on the facts of this case. Alaska has offered no substantial evidence to show that an untimely application was in fact considered in this case. Cf. Albert, 38 F.3d at 1076 & n. 7 (refusing to consider Alaska's argument that agency acted ultra vires by cancelling the State's highway rights-of-way because Alaska "failed to provide any evidence that agency officials exceeded their authority" by doing so). In fact, the evidence in this case is clearly sufficient, under IBLA precedent and agency policies, to demonstrate that Foster's application was timely filed. See, e.g., State of Alaska (Mary Sanford), 131 IBLA at 125; Ouzinkie Native Corp., 83 IBLA at 228; C.R. 31, Ex. 1, at II-3 (excerpt from BLM Alaska Handbook ).
 
 IV. INITIATION OF ADMINISTRATIVE PROCEEDINGS
 
 18
 On the basis of Albert, we reject Alaska's argument that the United States waived its immunity from suit by initiating an administrative action against the State. See 38 F.3d at 1074-75.
 
 CONCLUSION
 
 19
 Although Alaska urges us to distinguish Albert, we cannot find a legally sound basis for doing so. Unless and until an en banc panel of the Ninth Circuit revisits Albert, we are bound to follow it. That means that we must hold in this case that Alaska's suit is precluded by the United States' sovereign immunity. We accordingly affirm the district court's dismissal of the case for lack of subject-matter jurisdiction.
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 The Allotment Act was repealed by the Alaska Native Claims Settlement Act, Pub.L. No. 92-203, 85 Stat. 688 (1971) (codified at 43 U.S.C. Secs. 1601-1624) ("ANCSA"). ANCSA contained a savings clause for allotment applications filed pursuant to the Allotment Act that were "pending before the Department of Interior on December 18, 1971." 43 U.S.C. Sec. 1617(a)
 
 
 [2]
 This court did not consider in Albert whether the United States had waived its immunity in 43 U.S.C. Sec. 1632(a) (ANILCA Sec. 902). We now hold that section 1632(a) is a statute of limitations provision, rather than an " 'unequivocally expressed' " waiver of immunity. See Albert, 38 F.3d at 1072 (quoting United States v. Nordic Village, 503 U.S. 30, 33-34, 112 S.Ct. 1011, 1014, 117 L.Ed.2d 181 (1992)); cf. 16 U.S.C. Sec. 3117(a) (ANILCA Sec. 807) (certain persons aggrieved by the federal government's failure to comply with certain sections of the Act "may ... file a civil action in the United States District Court for the District of Alaska")
 
 
 [3]
 For example, "if a dispute occurs pertaining to the sale of an employee's personal house, his government employment provides him with no shield to liability." 806 F.2d at 859
 An official's actions that allegedly are taken pursuant to an unconstitutional statute, or allegedly unconstitutional actions taken pursuant to a constitutional statute, are subject to a per se divestiture of sovereign immunity. Id. Alaska does not argue for a divestiture of immunity based on an alleged constitutional violation, however.
 
 
 [4]
 Alaska's argument in its reply brief, that the agency acted ultra vires by "cancelling" Alaska's 1969 right-of-way based on Foster's use and occupancy since 1964, also stands or falls with the validity of the relation-back doctrine. For the same reasons discussed in text, we must reject this argument as well
 
 
 [5]
 Alaska argues that Albert's approval of the relation-back doctrine does not control this case because the IBLA allegedly has repudiated (or at least restricted) the doctrine. Alaska relies on the IBLA's recent decisions in State of Alaska (Mary Sanford), 131 IBLA 121 (1994), and State of Alaska (Irene Johnson and Jack Craig), 133 IBLA 281 (1995). We cannot agree, however, with Alaska's reading of those cases. In State of Alaska (Mary Sanford), the IBLA expressly declined Alaska's invitation to revisit its prior cases that had approved the "relation-back doctrine." 131 IBLA at 127. The IBLA simply found the doctrine inapplicable on the facts of that case because the applicant had applied for land that was mineral in character and thus statutorily unavailable for allotment at the time she began her use and occupancy. Id. at 127-28 (only "vacant, unappropriated, and unreserved non-mineral land" is subject to allotment under the Allotment Act) (emphasis added). Thus, the applicant had no right to the land, regardless of the applicability of the relation-back doctrine. Similarly, in State of Alaska (Irene Johnson and Jack Craig), the IBLA again reaffirmed the general applicability of the relation-back doctrine, but noted an exception "where the land applied for was mineral-in-character and thus not available for Native allotment during an asserted period of use and occupancy [by the applicant] prior to the time the State was granted its right of way." 133 IBLA at 289-90. Applicability of the relation-back doctrine in this case is not called into question by State of Alaska (Mary Sanford) or State of Alaska (Irene Johnson and Jack Craig) because the right-of-way at issue in this case is Alaska's 1969 highway right-of-way, and not a material site right-of-way on land that is mineral in character. See State of Alaska (Mary Sanford), 131 IBLA at 127 (noting that mineral material site rights-of-way are treated differently for purposes of relation-back doctrine than other types of rights-of-way)