STATE OF ALASKA, Plaintiff–
Appellant,

v.

Bruce E. BABBITT, Secretary of the
Interior; United States of America,
William T. Bryant, Defendants–Appel-
lees.

No. 95–36122.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 1996.

Submission Vacated Nov. 16, 1998.

Reargued and Resubmitted Jan. 25, 1999.

Decided June 18, 1999.

E. John Athens, Jr., Assistant Attorney General, Fairbanks, Alaska, for the plaintiff-appellant.

Paul R. Lyle (briefed), Assistant Attorney General, Fairbanks, Alaska, for the plaintiff-appellant.

Jeffrey P. Kehne (briefed), United States Department of Justice, Washington, D.C., for the defendants-appellees.

Andrew C. Mergan (argued), United States Department of Justice, Washington, D.C., for the defendants-appellees.

Before: NOONAN, THOMPSON, and KLEINFELD, Circuit Judges.

KLEINFELD, Circuit Judge:

The United States issued a 500 acre grant to the State of Alaska in 1961. The grant was of a right of way for a material site to mine gravel. It was part of a comprehensive scheme of right of way grants for what has become the Parks Highway, the primary highway between Anchorage and Fairbanks. The highway was constructed, in parts quite slowly over extraordinarily rugged terrain, during 1969–71. The land at issue in this case is about 30 miles south of Cantwell.

In 1970, appellee William T. Bryant filed an application for an Alaska Native allotment,[1] the relevant portion of which is within the 1961 grant to the state. Bryant filed his application nine years after the United States had granted the right of way for that location to the State of Alaska, during the period when the Parks Highway was being built. Bryant's application sought 120 acres, and stated that although he lived in Anchorage, he had used the land every year since 1964, from August to March, for hunting, picking berries, and trapping. Bryant's allotment is a long, narrow rectangle straddling the highway.

In 1969, after Bryant stated that he began his hunting, trapping and berry picking on the land, but before Bryant filed his application for a Native allotment, the United States granted to the State of Alaska an amended right of way for the land at issue. This 1969 grant refines the earlier grant. It lies substantially within the 1961 grant but is for much less of the parcel, and shows exactly where the highway goes. In the blank on the government form for "date of grant," the 1969 grant says "original grant October 3, 1961." Years after the highway was built, in 1988, the state relinquished the unused part of its 1961 grant.

The substantive question in this case is whether Bryant's use and occupancy entitled him to take priority over the state's earlier grant. The main procedural issue is whether the district court had jurisdiction to decide that substantive question.

The Bureau of Land Management initially questioned whether Bryant's evidence of use and occupancy was sufficient, but eventually approved Bryant's allotment in 1988. The state initiated private contest proceedings.[2] It presented witnesses who lived, hunted and trapped, in the area, and who had worked on the highway project in the area of the allotment, none of whom ever saw Bryant or any sign of his use. But the administrative law judge dismissed the state's contest and the Interior Board of Land Appeals affirmed.[3] Two points in the IBLA deci-

---

**1.** 43 U.S.C. §§ 270–1 to 270–3, repealed with saving clause for allotment applications pending on December 18, 1971, at 43 U.S.C. § 1617.

**2.** 43 C.F.R. § 4.450.

**3.** IBLA No. 91–341, 129 IBLA 35 (1994).

sion are important to the case in its present posture. The first is that, although five years of use and occupancy is needed to entitle an applicant to an allotment,[4] the application "relates back" to the commencement of the use and occupancy, so the land need only be vacant and unappropriated at that earlier time; not the later time when the application for native allotment is filed. Second, although land must be "unappropriated" to be open for native allotments, the 1961 right of way did not make the land unavailable, because it granted only a right of way and not the fee, and the state had relinquished all but four acres of the material site after the road was built.

The state then filed an action in the United States District Court to obtain judicial review of the IBLA decision pursuant to the Administrative Procedure Act.[5] The district court dismissed the action for lack of jurisdiction, ruling that our authorities and earlier decisions against the state in other cases barred the exercise of jurisdiction. But the district judge made an express plea for reversal in his written order: "the facts of this case cry out to the court for review and a different result."[6] The district judge said that it made no sense for the state to lose its first in time priority, based on its 1961 grant, because it successfully obtained a more precise and permanent grant in 1969. Also, in his plea for reversal, the district judge said "it is inequitable that Bryant's use and occupancy ... relates back in time to his original entry ... but the State's admittedly prior rights to use the land in question for a

public highway do not relate back to its original public filing. . . ."[7]

## ANALYSIS

The Department of the Interior, for appellees Babbitt and Bryant, argues that the district court lacked jurisdiction under the Quiet Title Act.[8] That statute allows the United States to be named as a defendant in a civil action to adjudicate a disputed title to real property, but expressly "does not apply to trust or other restricted Indian lands."[9]

The Quiet Title Act is "the exclusive means" by which adverse claimants can challenge the United States' title to real property.[10] We have interpreted that exclusivity to mean that a plaintiff cannot avoid the Indian lands exception by obtaining jurisdiction under the Administrative Procedure Act.[11] The State of Alaska's form of complaint, therefore, seeking review under the Administrative Procedure Act, cannot avoid the limitations of the Quiet Title Act.

The State argues that the officers and agents of the United States acted *ultra vires*. The argument is in substance that the legal decision they made was so plainly incorrect that the officers acted completely outside their governmental authority. We have twice rejected, in cases similar to this one, the argument that such decisions are *ultra vires*.[12] The officers' suit means of challenging federal government title to land was rejected by the Quiet Title Act.[13] The *ultra vires* argument has to be rejected in this case because it

4. 43 U.S.C. § 270–3, repealed (see footnote 1).

5. 5 U.S.C. §§ 701 et seq.

6. Order, page 11, n. 18 (September 18, 1995).

7. *Id.*

8. 28 U.S.C. § 2409a.

9. 28 U.S.C. § 2409a(a).

10. *Block v. North Dakota,* 461 U.S. 273, 286, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983).

11. *State of Alaska v. Babbitt (Albert),* 38 F.3d 1068 (9th Cir.1994).

12. *Id.* at 1076; *State of Alaska v. Babbitt (Foster),* 67 F.3d 864, 867 (9th Cir.1995).

13. *Block,* 461 U.S. at 284–286, 103 S.Ct. 1811.

would be no more than the old officers' suit in new words.

■ Of course the Indian lands exception applies only if the lands at issue are Indian lands, or at least colorably so. The Quiet Title Act waives sovereign immunity subject to the exception that it "does not apply to trust or other restricted Indian lands." [14] We have repeatedly, in all of our analogous cases speaking to the Indian lands exception, carefully carved out an exception to the exception for cases where the claim of Indian lands is not "colorable." In *Wildman v. United States*,[15] we said that the United States cannot be put to its proof "when it has a colorable claim" that it holds the land in trust for Indians. Judge Hug, concurring separately, pointed out that the court "did not need to determine whether a bare assertion of a claim would be sufficient to invoke the Indian land exception because it is clear that the claim of the United States that the land is Indian land is substantial." [16] In *Albert*,[17] we noted that the Indian lands sovereign immunity applies whether the government is right or wrong, and gave further contour to the "colorable claim" requirement. We said that judicial inquiry extends no further than "a determination that the government had some rationale," and that its position "was not undertaken in either an arbitrary or frivolous manner." [18] *Foster* again conditioned applicability of the Indian lands exception, saying "[a]s long as the United States has a colorable claim." [19]

The State of Alaska has urged that the position of the United States in this particular case was so far outside what the law permitted as to be arbitrary and frivolous, leaving not even a colorable basis for characterizing the land at issue as In-

dian lands. The district court, though deeming itself constrained to rule otherwise by our precedents, deemed this view to have considerable merit. As we note above, the district judge made an express request that we overrule him, because of the arbitrariness of the result. At oral argument, the judge carefully parsed the IBLA decision and expressed his view "that the decision was either cynical or that it was intellectually dishonest." [20] Of the IBLA decision's "focal point" of the decision, that the state had relinquished its grant of the original material site because it no longer needed it, the judge said "What a bunch of garbage":

As I indicated when I came in this morning, I really have a big bone to pick with the decision that was made in this case, not so much because of the result, but because of the—you know, I've struggled to try and find a word to characterize my reaction to this and the closest I could get was a feeling that the decision was either cynical or that it was intellectually dishonest because the focal point of the decision, sort of the culmination of it, it appears on—I think it's page 9 of the decision and I lost my mark. Hang on just a second. Well, I guess it's page 10.

Page 10 in the incomplete paragraph that's at the top of the page, the decision says: "The state's relinquishment of all but 4.006 acres of the original 500–acre site demonstrated that the remainder of the site was no longer needed by the state and abrogated the state's interest in the land." What a bunch of garbage. Everybody knows the state built a road across the material site. They built it on the strength of an easement that was granted under the same serial number

**14.** 28 U.S.C. § 2409a(a).

**15.** *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir.1987).

**16.** *Id.* at 1310.

**17.** *State of Alaska v. Babbitt (Albert)*, 38 F.3d 1068 (9th Cir.1994).

**18.** *Id.* at 1076.

**19.** *State of Alaska v. Babbitt (Foster)*, 67 F.3d 864, 867 (9th Cir.1995), *amended* at 75 F.3d 449, 451 (9th Cir.1995).

**20.** Transcript page 23.

before the BLM that the—that granted the original material site of 500 acres.

◼ Subsequent to argument in this case, the administrative agency completely changed its own interpretation of the law, and eliminated much or all of the foundation for its opinion in the case at bar. We withdrew the case from submission and ordered reargument. The law of allotments as construed by the agency responsible for applying it appears no longer to give Bryant a colorable claim to an allotment, so the government's position is now even more tenuous than it was when the district judge made his strong remarks. The change in the law as construed by IBLA compels the conclusion that there is now no colorable basis for application of the Indian lands exception, so the agency position now falls within the "undertaken in an arbitrary or frivolous manner" category for which there is jurisdiction.

In its 1997 decision, *Goodlataw*,[21] IBLA itself has now held that such occupancy as Bryant had in the case at bar when he commenced his hunting, trapping, and berry picking, was not "under color of law."[22] *Goodlataw* holds that allotments are granted subject to valid existing rights, and a state right of way is such a valid and existing right. It holds further that if the Native use and occupancy commences subsequent to a right of way grant to the state, then relation back cannot save it regardless of the state of affairs at the time of the native allotment application, because "the qualifying Native use and occupancy must be under color of law."[23] *Goodlataw* expressly analogizes the case to "a material site right of way," such as the state had in the case at bar, and says that the rights the state acquires under a material site right of way bars allowance of an allotment.[24] "[S]ince the allotment applicant had no legal basis for barring the issuance of the material site right of way *at the time it occurred* because the allotment applicant's attempted appropriation of the land was then contrary to the law, the subsequent removal of the statutory prohibition against granting lands valuable for gravel under the Native Allotment Act could not result in a retroactive invalidation of a right of way which was in conformity with the law when it was issued."[25]

This new administrative position eviscerates the basis for the earlier IBLA decision in the case at bar. Now that IBLA, in *Goodlataw*, has held expressly that commencement of the use and occupancy period for a Native allotment is without "color of law" if the state already has a right of way at the time, that a materials site right of way suffices to bar effective use and occupancy by the would-be allottee, and that subsequent elimination of the right of way does not retroactively give "color of law" to the Native use and occupancy, the claim by the would-be allottee in the case at bar apparently would be treated by IBLA as not made under "color of law." This necessarily means that the claim that the land at issue is Indian land is not "colorable," so the exception to the Indian lands exception demarcated in *Foster, Albert,* and *Wildman* applies, and there is jurisdiction under the Quiet Title Act.

When we decided whether the Indian lands exception vitiated jurisdiction in *Albert*,[26] our decision was grounded upon the then-prevailing administrative interpretation by IBLA that a native allotment related back to initiation of native occupancy, despite application for and grant of a right of way to the state prior to filing and grant of the native allotment.[27] Because there

21. *State of Alaska (Goodlataw)*, 140 IBLA 205 (1997).

22. *Id.* at 214.

23. *Id.*

24. *Id.* at 215 (emphasis in original).

25. *Id.* at 215.

26. *State of Alaska v. Babbitt (Albert)*, 38 F.3d 1068 (9th Cir.1994),

27. *Id.* at 1075–76.

was "some rationale" for the agency position, and it "was not undertaken in an arbitrary or frivolous manner," [28] we held that the claim of Indian lands was sufficiently colorable to be unchallengeable on the merits. The then-prevailing administrative interpretation gave a "colorable" basis to the claim that the land at issue was Indian land. But the change in the agency's position renders this case distinguishable from *Albert.* The agency now takes the position, in *Goodlataw,* that if the "occupancy and use was initiated after the land had been withdrawn from appropriation," then "Native settlement on land which was closed to entry afforded no cognizable rights." [29] Because "one of the essential premises" of the former IBLA rule that a native allotment relates back to the initiation of use and occupancy is that "the qualifying Native use and occupancy must be under color of law," [30] Native occupancy commenced when the land was not subject to appropriation "traditionally afforded an applicant no rights thereto." [31] Now that the administrative interpretation has been reversed, the colorable basis we found for treating the land at issue as Indian land in *Albert* and *Foster* no longer exists. This change in administrative law, by eliminating the legal basis for our determination that there was a colorable basis, renders *Albert* and *Foster* distinguishable.

IBLA's decision in *Goodlataw* appears to be on all fours with the case at bar. The state's 1961 right of way was in effect when Bryant began hunting, trapping and berry picking on the land. It does not matter that the state later obtained an amended right of way and relinquished what it did not need, because the right of way had been "appropriated" [32] when Bryant commenced his use. Therefore if the agency applied to Bryant its own decision in *Goodlataw,* apparently Bryant's allotment would not relate back to his commencement of use and would not take priority over the state's right of way. In this case, as in *Goodlataw,* the allotment was approved by adjudication, and not by Congress under 43 U.S.C. § 1617(a), which further distinguishes *Albert,* [33] though because the change in IBLA's position sufficiently distinguishes the cases, we need not reach the question whether the distinction between allotments approved by adjudication and those approved by legislation matters to the outcome.

Because IBLA would now apparently hold that Bryant's commencement of use and occupancy was not made under color of law, application of the Indian lands exception lacks a rational basis. We therefore REVERSE the judgment of the district court dismissing this case for lack of jurisdiction, and remand for such proceedings as may be appropriate.

---

28. *Id.* at 1076.

29. *State of Alaska (Goodlataw),* 140 IBLA 205, 214 (1997).

30. *Id.*

31. *Id.*

32. 23 U.S.C. § 317(b).

33. *State of Alaska v. Babbitt (Albert),* 38 F.3d 1068, 1075 (9th Cir.1994).