**1.** The current Secretary of the Interior has been substituted as a party pursuant to Rule

ORDERED that this case is STAYED until June 24, 2002. If, by that time, the FCC has not ruled on the referred issues, this Court will proceed with the instant litigation. It is further

ORDERED that the parties are directed to file a joint report on the status of the FCC proceedings six (6) months from the date of this Order.

**State of ALASKA, Plaintiff,**

**v.**

**Gale NORTON, Secretary of the Interior;[1] the United States of America; and William T. Bryant, Defendants.**

**No. A94–0301–CV(HRH).**

United States District Court, D. Alaska.

April 19, 2001.

25(d)(1), Federal Rules of Civil Procedure.

E. John Athens Jr., Attorney General's, Fairbanks, AK, for State of Alaska.

Dean Dunsmore, U.S. Dept. of Environment & Natural, anchorage, AK, for Gale Norton, U.S.

John W. Hendrickson, Anchorage, AK, for William T. Bryant.

## ORDER

HOLLAND, District Judge.

On remand from the Ninth Circuit Court of Appeals, the court reviews *Alaska v. Bryant,* 129 IBLA 35 (1994). The State of Alaska[2], the United States of America[3], and Bryant[4] have all submitted briefing on this matter.

## INTRODUCTION

This case began on May 17, 1988, when the State of Alaska contested the Interior Department's approval of William T. Bryant's Native allotment application. Administrative Law Judge (ALJ) John R. Rampton, Jr., held a private contest hearing on May 22 and 23, 1990, in Anchorage, Alaska. On June 3, 1991, the ALJ issued an order dismissing the State's contest. The State appealed the ALJ's decision to the Interior Board of Land Appeals (IBLA), and the IBLA affirmed the ALJ's decision on March 21, 1994. *See Alaska v. Bryant,* 129 IBLA 35 (1994). The Department of the Interior then issued Bryant his Native allotment.

Pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701–706, the State sought judicial review of the IBLA's decision in this United States District Court. Bound by Ninth Circuit precedent, this court reluctantly determined that it lacked jurisdiction to address the merits of the

---

**2.** Clerk's Docket Nos. 79 and 87.

**3.** Clerk's Docket No. 82.

**4.** Clerk's Docket No. 85.

IBLA's decision.[5] The State appealed the order to the Ninth Circuit Court of Appeals. An intervening IBLA decision, *State of Alaska (Goodlataw)*, 140 IBLA 205 (1997), dramatically changed the law controlling this case. Based on *Goodlataw*, the Ninth Circuit concluded that this court no longer lacked jurisdiction to review the merits of the IBLA's decision in *Bryant* and accordingly reversed and remanded the case. *See Alaska v. Babbitt (Bryant)*, 182 F.3d 672 (9th Cir.1999).

Prior to accepting briefing on the merits of the State's appeal, the court directed the parties to address whether the IBLA had further jurisdiction to consider or reconsider this case. The court reviewed the briefing and determined that the IBLA no longer had jurisdiction to consider the case because, according to the IBLA itself, once the United States Department of the Interior issues a Native allotment, the IBLA no longer has jurisdiction to resolve disputes concerning rights to the allotted land.[6] Accordingly, this court now addresses the merits of the State's appeal, which is fundamentally a contest to Bryant's Native allotment.

### FACTS

Plaintiff-appellant is the State of Alaska. Defendant-appellees are Gale Norton, Secretary of the Interior, and the United States of America (collectively referred to as the federal defendants) and William T. Bryant. The action concerns conflicting claims to land located along the George Parks Highway between Anchorage and Fairbanks, Alaska. There are three distinct conveyances material to the disposition of the action. The first is a material site right-of-way grant originally issued by the Department of the Interior, Bureau of Land Management (BLM), to the State in 1961. The second is a material site right-of-way grant issued by the BLM to the State in 1965. The third is a Native allotment, applied for in 1970, approved by the BLM in 1988, and issued by the BLM to Bryant in 1994.

Appended to the federal defendants' brief is a useful plat of the lands in question. The 1961 material site appears in green as A–052629; the second material site, also in green, is designated as A–062703; and Bryant's Native allotment appears in red as AA 6092.[7]

### *Material Site Right–of–Way Grant A–052629 (Parcel 14–1)*

On October 3, 1961, the BLM granted a 500–acre material site right-of-way to the State (designated A–052629, Parcel 14–1). The grant was pursuant to the Federal Highway Act, 23 U.S.C. § 317, and part of a larger scheme to grant a right-of-way for construction of the George Parks Highway from the Matanuska Valley outside Palmer to Fairbanks. On November 25, 1968, the State sought to amend the 500–acre material site right-of-way to reflect the actual location of the proposed Parks Highway. On May 3, 1969, the BLM issued amended Parcel 14–1 (also pursuant to 23 U.S.C. § 317), attenuating the area of the original right-of-way grant consistent with the highway's proposed location. On January 4, 1988, the State relinquished all but 4.006 acres of the original grant. The remaining 4.006 acres is still designated A–052629 and, alternatively, MS 35–4–046–2.

### *Material Site Right–of–Way Grant A–062703*

On June 24, 1965, the State filed material site right-of-way application A–062703,

---

5. Order re Motion to Dismiss (Sept. 18, 1995), Clerk's Docket No. 45.

6. Clerk's Docket No. 72.

7. Surveyor's plat, Exhibit 2, Federal Defendants' Response to State's Opening Brief, Clerk's Docket No. 82.

seeking use of approximately 8.624 acres of land as a source for materials to aid in construction of the highway. The State did this even though the majority of the land requested was located within the 500 acres originally granted in Parcel 14–1.[8] The BLM issued right-of-way grant A–062703 on September 30, 1965. The State did not relinquish A–062703.

### Bryant's Native Allotment

On November 19, 1970, the Bureau of Indian Affairs filed an application for a Native allotment on behalf of Bryant pursuant to 43 U.S.C. §§ 270–1 to 270–3.[9] Bryant's application sought a 120–acre, rectangular plot of land, straddling what would become the Parks Highway and almost entirely within the boundaries of material site right-of-way A–052629, Parcel 14–1, as originally granted in 1961. Pursuant to the application process, Bryant stated that he had used and occupied the land since 1964. The BLM initially questioned whether Bryant's evidence of use and occupancy was sufficient, but ultimately approved the application in 1988. On July 11, 1994, the BLM issued a Native allotment containing approximately 120 acres of land to Bryant. Bryant's Native allotment, designated AA 6092 (Certificate No. 50–94–0214), was properly recorded in the Talkeetna Recording District on September 20, 1994.

### DISCUSSION

■ The State seeks reversal of *Alaska v. Bryant*, 129 IBLA 35 (1994). Federal district courts may reverse the IBLA only if the IBLA's decision is arbitrary and capricious, not supported by substantial evidence, or contrary to law. *See Hjelvik v. Babbitt*, 198 F.3d 1072, 1075 (9th Cir. 1999).

When the BLM originally approved Bryant's allotment in 1988, it found that the approved allotment would be subject to material site right-of-way A–052629 because the right-of-way grant, effective in 1961, preceded Bryant's initial use and occupancy in 1964 by three years. However, the BLM also declared that those portions of the amended highway right-of-way A–052629 and material site right-of-way A–062703 in conflict with Bryant's Native allotment were null and void. The BLM explained that the vested right to an allotment related back to Bryant's initial use and occupancy in 1964 and therefore preempted intervening and conflicting State right-of-way applications.

The State filed its contest against Bryant's Native allotment application, in part alleging that the application should have been denied because the 1961 material site grant constituted a bar to the land being allotted to Bryant. The ALJ largely or completely overlooked this argument and dismissed the State's contest on grounds that the State did not adequately establish that Bryant had failed to use his claimed allotment in conformity with the Native Allotment Act. *See Alaska v. Bryant*, 129 IBLA 35, 39 (1994).

The State appealed the ALJ's decision to the IBLA, and the IBLA affirmed the ALJ's decision. *See id.* at 44. In the opinion, the IBLA noted the State's contention that the land claimed by Bryant was not available for a Native allotment because material site right-of-way A–052629 was granted before Bryant began his use and occupancy. *Id.* at 39. However, the IBLA did not find this argument persuasive. Instead, the IBLA looked to the date Bryant began his use and occu-

---

8.  See surveyor's plat, Exhibit 2, Federal Defendants' Response to State's Opening Brief, Clerk's Docket No. 82.

9.  Repealed on December 18, 1971, with a saving clause for allotment applications then pending, 43 U.S.C. § 1671.

pancy of the allotment (1964) and concluded that because that date preceded the effective date of material site right-of-way A–062703 (1965) and the effective date of the amended highway right-of-way (1969), those rights-of-way were issued subject to the Native allotment. *Id.* at 43.

The IBLA found "no merit in the contention that land embraced within Bryant's allotment was unavailable because the bulk of that land was included within material site right-of-way A–052629 (Parcel 14–1), issued on October 3, 1961." *Id.* The IBLA focused on the nature of the BLM's original grant to the State, commenting that a "material site right-of-way grant does not transfer title to land or remove it from the Secretary's jurisdiction." *Id.* The IBLA then cited federal regulations that required the State to give the BLM notice when its need for land ceased to exist, at which point all unneeded lands would immediately revert back to the BLM's control. *Id.* The IBLA reasoned that the "State's relinquishment of all but 4.006 acres of the original 500–acre site in 1988 demonstrated that the remainder of the site was no longer needed by the state." *Id.* at 44. From this, the IBLA concluded that the State had in essence retroactively "abrogated its interest" in all but the 4.006 acres of the originally granted right-of-way land. *Id.*

The IBLA struggled with the fact that although the material site was issued in 1961, the State did not "use" any of the land until 1970. The IBLA appears to have tried to attain what it thought was a just or fair result—issuing an allotment to someone who hunted and picked berries on land without knowledge of the State's preexisting right to that land. With just cause, the State feels that it was entitled to rely upon the grant in A–052629. Indeed, the State built a road believing that it had a material site right-of-way for the whole of A–052629. Only after the Parks

High-way was built did the State relinquish the unneeded portions of A–052629.

■ The starting point for the substantive analysis of the IBLA's decision as regards Bryant's Native allotment is the Native Allotment Act itself. According to the Act, Native allotments are limited to "vacant, unappropriated and unreserved nonmineral land in Alaska." *See* 43 U.S.C. § 270-1 (repealed on December 18, 1971, with saving clause for allotment applications pending at that time). It follows logically that occupied, appropriated, or reserved land is not available for allotment. The BLM issued the State its material site right-of-way grant in 1961 pursuant to the Federal Highway Act, 23 U.S.C. § 317. The Federal Highway Act defines right-of-way grants as "appropriations" of public land. *See* 23 U.S.C. 317(b); *see also Southern Idaho Conf. v. United States*, 418 F.2d 411, 414–15 (9th Cir.1969) (in part explaining that grants made to states pursuant to 23 U.S.C. § 317 are "appropriations"). Thus, lands designated in a right-of-way grant under the Federal Highway Act are "appropriations," and they are not available for Native allotments under the Native Allotment Act. The IBLA's *Bryant* decision ignores these principles.

■ Three years after *Bryant*, the IBLA reevaluated the legal effect that a preceding state right-of-way has on a subsequent Native allotment. *See State of Alaska (Goodlataw)*, 140 IBLA 205 (1997). In *Goodlataw*, the IBLA held that Native allotments are granted subject to valid existing rights, and a state right-of-way is such a valid existing right. *Id.* at 214; *analyzed in Alaska v. Babbitt (Bryant)*, 182 F.3d at 676. Where the period of use and occupancy is subsequent to the right-of-way grant, that period of use and occupancy is not "under color of law." *Id.* This determination is important because, as the

IBLA noted in *Goodlataw*, "qualifying Native use and occupancy must be under color of law." *Id.* Furthermore, the IBLA recognized that while the concept of relation back (to the date of physical entry by the applicant) can save some allotments, it cannot save the allotment where the initial date of occupancy is subsequent to the right-of-way grant. *Id.* Finally, the IBLA noted that subsequent elimination of the right-of-way does not retroactively give "color of law" to the Native use and occupancy otherwise trumped by a preexisting right. *Id.* at 215. Accordingly, any diminution of a right-of-way resulting from a relinquishment would be effective only from the time of relinquishment forward.

■ *Goodlataw* speaks almost directly to the situation in this case, and the Ninth Circuit Court noted as much. In its opinion addressing the State's appeal regarding jurisdiction, the Ninth Circuit Court extolled *Goodlataw*, stating that it "eviscerates the basis for the earlier IBLA decision in the case at bar." *Alaska v. Babbitt (Bryant)*, 182 F.3d at 676. Although the Ninth Circuit Court was presented with a question of district court jurisdiction, the court's *dicta* strongly suggests that, based upon *Goodlataw*, the IBLA's decision in this case is plainly and legally wrong.

> Now that IBLA, in *Goodlataw*, has held expressly that commencement of the use and occupancy period for a Native allotment is without "color of law" if the state already has a right of way at the time, that a materials site right of way suffices to bar effective use and occupancy by the would-be allottee, and that subsequent elimination of the right of way does not retroactively give "color of law" to the Native use and occupancy, the claim by the would-be allottee in the case at bar apparently would be treated by IBLA as not made under "color of law."

*Id.* Such instruction from the Ninth Circuit together with this court's original conviction that the IBLA's *Bryant* decision was wrong [10] leaves no doubt that *Bryant* must be reversed.

The court turns now to the question of what remedy should flow from this court reversing the IBLA.[11] Throughout the life of this case, the State has contested Bryant's Native allotment. The above analysis shows that Bryant is not entitled to any of the allotted lands that overlap the material site right-of-way granted to the state in 1961 because the land was appropriated for the State before Bryant's use and occupancy. This leaves Bryant with just under 8 acres of land.[12]

Bryant continues to argue that he is entitled to his entire allotment based on the relation back theory.[13] Specifically, Bryant argues that the State only seeks reversal of the IBLA decision as it pertains to the Parks Highway right-of-way, and that the right-of-way was not granted until 1969. Therefore his allotment, which

---

**10.** Order re Motion to Dismiss at 11, n. 18 (Sept. 18, 1995), Clerk's Docket No. 45.

**11.** Again, this court has held, based on IBLA precedent, that the Department of the Interior no longer has jurisdiction to resolve disputes over rights to allotted lands, even if conveyance of the allotment was wrongfully accomplished through inadvertence or mistake. *See* Order re Jurisdiction at 2 (Oct. 13, 2000), Clerk's Docket No. 72.

**12.** *See* Detail 1 and 2 on surveyor's plat, Exhibit 2, Federal Defendant's Response to State's Opening Brief, Clerk's Docket No. 82. Bryant would be entitled to the portion of material site A–062703 outside the boundaries of the 1961 right-of-way grant A–052629, Parcel 14–1 (.28 Acres), plus the remainder of his allotment which sits outside the boundaries of the 1961 right-of-way grant (7.36 acres) for a total of 7.64 acres.

**13.** Clerk's Docket No. 85 at 2.

relates back to the 1964 date of initial use and occupancy, controls. Bryant is wrong. Bryant has no rights to any of the lands appropriated for the State in 1961.[14] As a legal conclusion, that leaves Bryant with just under 8 acres which was unappropriated at the time of his entry.

The State argues that while Bryant is not entitled to any of the lands within the confines of the 1961 material site right-of-way grant, it has no objection to Bryant's allotment including some of those lands as long as the allotment excludes reduced material site A–052629, Parcel 14–1, amended right-of-way grant A–052629 (representing the actual location of the Parks Highway), and the portion of material site A–062703 that sits within the boundaries of the original 1961 right-of-way grant.[15]

The federal defendants do not contest any of the State's substantive arguments on the merits of this case. The federal defendants specifically state that the United States "is not representing Mr. Bryant, the owner of the property, and cannot state his opinion on this issue." [16] Those positions notwithstanding, the federal defendants suggest that the court enter the following final judgment in this case:

Declaratory judgment is entered in favor of the plaintiff State of Alaska as follows:

That the Native Allotment (Certificate No. 50–94–0214) issued to defendant William T. Bryant is subject to the following:

a. Material site A–052629, Parcel 14–1, consisting of 4.006 acres.

b. Right-of-way A–052629 for the George Parks Highway, as depicted [on] the Map Project F–035–4(2), Parcel No. 9, Hurricane Gulch to East Fork Chulitna River.

c. Material site A–062703, except for 0.28 acres which was never within material site A–052629.[17]

The State strongly disagrees with the "subject to" language and argues that as a matter of law all of its right-of-way interests must be *excluded* from Bryant's allotment. Arguing the equities, the State points out that it should not have to face the future prospect that the federal defendants may assign to Bryant the administration of the rights-of-way (as the BLM routinely does with Native corporations pursuant to 43 C.F.R. § 2803.5(b)) or that Bryant may assert some other interest in the rights-of-way as the underlying owner of the fee. The State avers that it would be especially inappropriate for a judgment to enable Bryant to exert any control over property he does not have a legal right to.

As a matter of law, the State is correct. The IBLA in *Goodlataw* and the Ninth Circuit in *Alaska v. Babbitt (Bryant)* (in part construing *Goodlataw*) both concluded that prior appropriation of a state right-of-way precludes subsequent Native use

---

**14.** Bryant also argues that it was improper for the BLM to grant the 1969 Parks Highway right-of-way. He cites no authority for this position. Issues concerning a state's use of a material source is solely "a matter to be settled between the United States and the State." *Southern Idaho Conf. v. United States*, 418 F.2d at 415–416. The Federal defendants have never objected to the location of the Parks Highway being within the original material site grant.

**15.** *See* surveyor's plat at 4, Exhibit 2 attached to Federal Defendant's Response to Opening Brief of State of Alaska, Clerk's Docket No 82. Note that as a legal matter, the State is not entitled to the portion of A–062703 that sits outside the 1961 grant because A–062703 was effective in 1965—subsequent to the date of Bryant's initial use and occupancy.

**16.** Federal Defendants' Response to State's Opening Brief at 2, Clerk's Docket No. 82.

**17.** *Id.* at 2–3.

and occupancy from being "under color of law." As the issuance of a Native allotment is predicated by qualifying use, the preceding right-of-way has the legal effect of excluding the right-of-way lands from allotment. *See Goodlataw,* 140 IBLA at 215; *Alaska v. Babbitt (Bryant),* 182 F.3d at 676. The court rejects the federal defendants' suggestion.

There is no legal basis for making the State's right-of-way lands subject to Bryant's allotment. For the reasons discussed above, Bryant's allotment is void as to all land within the original boundaries of A–052926. What future disposition should be made as to the now unappropriated portions of what was A–052926 is not for the court to say.

The State is entitled to a declaratory judgment that it holds from the United States a valid and subsisting appropriation of lands as follows: (a) material site A–052629, Parcel 14–1, consisting of 4.006 acres; (b) right-of-way A–052629 for the George Parks Highway, as depicted on the Map Project F–035–4(2), Parcel No. 9, Hurricane Gulch to East Fork Chulitna River; and (c) material site A–062703, except for 0.28 acres which was never within material site A–052629. Because the State has relinquished all of A–052629 except parcels (a), (b), and (c), and because Bryant's Native allotment has been invalidated to the extent that it overlapped A–052629, the federal defendants once again have jurisdiction to deal as they see fit with the relinquished lands.

### CONCLUSION

For the foregoing reasons, the IBLA's decision in *Alaska v. Bryant,* 129 IBLA 35 (1994), is reversed. The clerk of court shall enter judgment declaring that the State holds from the United States a valid and subsisting appropriation of lands as follows: (a) material site A–052629, Parcel 14–1, consisting of 4.006 acres; (b) right-

of-way A–052629 for the George Parks Highway, as depicted on the Map Project F–035–4(2), Parcel No. 9, Hurricane Gulch to East Fork Chulitna River; and (c) material site A–062703, except for 0.28 acres which was never within material site A–052629.