Evelynn C. **FOSTER**, Appellant,

v.

**STATE of Alaska, DEPARTMENT OF TRANSPORTATION**, Appellee.

No. S–9720.

Supreme Court of Alaska.

Nov. 16, 2001.

Richard A. Weinig, Pletcher, Weinig, Fisher & Dennis, Anchorage, for Appellant.

E. John Athens, Jr. and Paul R. Lyle, Assistant Attorneys General, Fairbanks, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

EASTAUGH, Justice.

## I. INTRODUCTION

The superior court dismissed for lack of subject matter jurisdiction Evelynn Foster's trespass claim against the State of Alaska.[1] Because adjudicating Foster's claim would have required the superior court to determine the scope of an easement on Foster's Native allotment, and because state courts lack jurisdiction to adjudicate the ownership or right to possession of Native allotment land, we affirm the dismissal of Foster's claim.

## II. FACTS AND PROCEEDINGS

In 1961 the United States Bureau of Land Management (BLM) granted the State of Alaska a material site right-of-way to a 64.39 acre square-shaped parcel of land near Little Honolulu Creek. In 1962 the BLM granted the state a right-of-way to a strip of land near the material site for construction of the George Parks Highway.[2] BLM amended this grant in 1969 to include a slightly different section of land.[3] The Parks Highway was constructed on the amended right-of-way between 1969 and 1971.

In April 1972 Evelynn Foster applied for a Native allotment under the Allotment Act,[4] which "allowed Alaska Natives to apply for land that they had used for certain specified purposes for at least five years."[5] Foster sought approximately 120 acres of unsurveyed land near Little Honolulu Creek, claiming seasonal use and occupancy of the land beginning in August 1964. The BLM granted Foster's application in December 1979.[6] A 1983 survey of Foster's allotment revealed that parts of the 1961 material site right-of-way, the 1962 Parks Highway right-of-way, and the 1969 amended Parks Highway right-of-way were located within Foster's allotment.

In March 1989 the BLM issued a decision confirming its 1979 approval of Foster's allotment, and stating that the allotment would be subject only to the 1961 material site right-of-way, the 1962 Parks Highway right-of-way, and a right-of-way for the Alaska Railroad. In April 1989 the state requested that the BLM make Foster's allotment subject to the 1969 amended right-of-way grant, on which the Parks Highway was constructed. The BLM denied the state's request, explaining that Foster's interest in the allotment related back to 1964, when she began to use and occupy the allotment, and "took precedence over intervening applications filed subsequent to the commencement of her use and occupancy." The state appealed the BLM decision to the Interior Board of Land Appeals (IBLA), which affirmed.[7]

The state then filed a complaint in United States District Court, seeking judicial review of the IBLA's decision.[8] The district court dismissed the state's complaint, concluding that it lacked subject matter jurisdiction over the action, because the United States, an indispensable party to the action, had sovereign immunity under 28 U.S.C. § 2409a (the

---

1. The record contains inconsistent spellings of appellant's first name. The Native allotment at issue here was granted to "Evelyn C. Foster," while the order appealed from and appellant's submissions to this court refer to "Evelynn C. Foster." We adopt the latter spelling.

2. *See Alaska v. Babbitt,* 75 F.3d 449, 450–51 (9th Cir.1996).

3. *See id.* at 450.

4. 43 U.S.C. §§ 270–1 to 270–3 (1970) (repealed 1971).

5. *Babbitt,* 75 F.3d at 451 (citing 43 U.S.C. §§ 270–1, 270–3 (1970) (repealed 1971)). The decision of the Interior Bureau of Land Appeals in *Alaska, Dep't of Transp. & Pub. Facilities (Foster),* 125 IBLA 291, 292 (1993), states that Foster applied for a Native allotment on April 17, 1972.

6. *See id.*

7. In *Alaska, Dep't of Transp. & Pub. Facilities (Goodlataw),* 140 IBLA 205 (1997), the IBLA reevaluated the legal effect that a prior right-of-way has on a subsequent Native allotment. The IBLA there held that where an allottee's use and occupancy of land begins after a right-of-way grant, the use and occupancy is not "under color of law," and the concept of relation back cannot save the allotment, because "the qualifying Native use and occupancy must be under color of law." *See id.* at 214–15; *see also Alaska v. Babbitt (Bryant),* 182 F.3d 672, 676 (9th Cir.1999); *Alaska v. Norton,* 168 F.Supp.2d 1102, 1106–07 (D.Alaska 2001).

8. *See Babbitt,* 75 F.3d at 451.

Quiet Title Act).[9] The United States Court of Appeals for the Ninth Circuit affirmed,[10] and the United States Supreme Court denied certiorari.[11]

The United States issued Foster an allotment certificate in August 1998, making Foster's allotment subject to the 1961 material site right-of-way, the 1962 Parks Highway right-of-way, and the Alaska Railroad right-of-way.

In August 1999 Foster filed a superior court complaint against the state for inverse condemnation and trespass, seeking damages, ejectment, and just compensation.[12] The superior court dismissed Foster's complaint for lack of subject matter jurisdiction. Foster appeals.

## III. DISCUSSION

### A. Standard of Review

■ We review de novo a dismissal for lack of subject matter jurisdiction.[13] We review attorney's fees awards for abuse of discretion, "which exists if an award is arbitrary, capricious, manifestly unreasonable, or improperly motivated."[14]

### B. It Was Not Error to Dismiss Foster's Trespass Claim for Lack of Subject Matter Jurisdiction.

■ Specified states, including Alaska, are granted jurisdiction by 28 U.S.C. § 1360(a) "over civil and criminal actions in Indian territory and involving Indians."[15] But § 1360(b) reserves for the federal courts jurisdiction over questions involving the ownership or right to possession of property held in trust by the United States or subject to a restriction against alienation imposed by the United States.[16] Hence, we have held that Alaska courts lack jurisdiction to decide claims involving the ownership or right to possession of Native allotment land.[17]

In *Heffle v. State,*[18] Alyeska Pipeline Service Company, acting as an agent for the State of Alaska, obtained from the United States a right-of-way for constructing the Haul Road.[19] The defendants, claiming to represent a Native allottee across whose allotment the right-of-way extended, constructed a barricade across the Haul Road and attempted to charge road use tolls to truck drivers using the road.[20] The state moved for a preliminary injunction to prevent interference with a public highway.[21] After the superior court entered an injunction, we vacated the injunction and remanded to the superior court with instructions to dismiss the state's action for lack of subject matter jurisdiction.[22] We recognized that under § 1360(b), state courts lack jurisdiction to adjudicate disputes involving the ownership or right to possession of property, such as

**9.** *See id.*

**10.** *See id.* at 454.

**11.** *See Alaska v. Babbitt,* 519 U.S. 818, 117 S.Ct. 70, 136 L.Ed.2d 30 (1996).

**12.** Foster conceded in the superior court that her inverse condemnation claim was barred by *United States v. Clarke,* 445 U.S. 253, 254–59, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980) (holding that Native allotment land may be condemned only by initiating formal condemnation proceedings and not by inverse condemnation).

**13.** *See Hydaburg Coop. Ass'n v. Hydaburg Fisheries,* 925 P.2d 246, 248 (Alaska 1996).

**14.** *Kellis v. Crites,* 20 P.3d 1112, 1113 (Alaska 2001) (citations omitted).

**15.** *Heffle v. State,* 633 P.2d 264, 268 (Alaska 1981).

**16.** 28 U.S.C. § 1360(b) provides in relevant part: "Nothing in this section ... shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of [property held in trust by the United States or subject to a restriction against alienation imposed by the United States] or any interest therein."

**17.** *See Foster v. Foster,* 883 P.2d 397, 401 (Alaska 1994); *Heffle,* 633 P.2d at 268–69. The United States is the fee owner of a Native allotment and holds the land in trust for the allottee. *See Minnesota v. United States,* 305 U.S. 382, 386, 59 S.Ct. 292, 83 L.Ed. 235 (1939).

**18.** 633 P.2d 264 (Alaska 1981).

**19.** *See id.* at 266.

**20.** *See id.*

**21.** *See id.*

**22.** *See id.* at 269.

Native allotments, held in trust by the United States or subject to a restriction against alienation imposed by the United States.[23] We also noted that "to reach the conclusion that an injunction is proper in this controversy, the ownership of and interests in the easement which crosses [the defendant's] Native allotment must be adjudicated." [24]

Foster contends that *Heffle* is distinguishable, because in that case "there had been no prior adjudication of the competing rights of the State and of [the allottee]." By contrast, Foster argues that "all disputes of title and possession between Foster and the State have been previously adjudicated" by the IBLA. Foster further argues that the IBLA's decision must be accorded preclusive effect under the doctrines of full faith and credit and collateral estoppel. Therefore, she concludes that her claims do not require the superior court to "adjudicate" the extent of her possessory interest in her Native allotment.

We assume for purposes of discussion that Foster correctly argues that the IBLA's decision must be given preclusive effect under the doctrines of full faith and credit and collateral estoppel, and that doing so would not be an impermissible "adjudication" of Foster's ownership or right to possession of her allotment. But we hold that Alaska state courts nevertheless lack subject matter jurisdiction to decide Foster's trespass claim. The 1969 amended right-of-way, upon which the Parks Highway was constructed, lies within the 1961 material site right-of-way.

Because the IBLA's decision did not address the scope of the state's 1961 material site right-of-way, and because it is predictable that the state would argue in defense to Foster's trespass claim that construction of the Parks Highway was a permitted use of the 1961 material site right-of-way, the superior court would have to resolve competing interests to Native allotment land. As in *Heffle*, the superior court would have to determine the scope of an easement crossing a Native allotment.[25] We therefore hold that it was not error to dismiss Foster's trespass claim for lack of subject matter jurisdiction.

## C. Attorney's Fees and Costs

Foster argues that it was an abuse of discretion to award costs and attorney's fees to the state under Alaska Civil Rules 79 and 82, given the superior court's conclusion that it lacked jurisdiction to adjudicate Foster's complaint. Foster cites cases from other jurisdictions holding that a court may not award attorney's fees and costs if it lacks jurisdiction over an action.[26] But in *Berry v. Ketchikan Pub. Utils.*, we awarded the appellee costs and attorney's fees under Alaska Appellate Rule 508(e), even though we held that Alaska courts lacked jurisdiction to adjudicate the appellant's claims.[27] Similarly, we hold that the court could award the state costs and attorney's fees under Civil Rules 79 and 82, even after it concluded that it lacked jurisdiction over Foster's claims.

Invoking the Rule 82(b)(3) factors, Foster argues that the court should have awarded

---

23. *See id.*

24. *Id.; see also Alaska, Dep't of Pub. Works v. Agli*, 472 F.Supp. 70, 73 (D.Alaska 1979) (holding that state courts cannot adjudicate "an equitable interest in a Native allotment in a state quiet title, ejectment or abuse of process action"); *Boisclair v. Superior Court*, 51 Cal.3d 1140, 276 Cal.Rptr. 62, 801 P.2d 305, 312 (1990) ("[I]n order for section 1360(b)'s jurisdictional preclusion to operate and its protective purpose to be fulfilled, the threshold question must be whether one possible outcome of the litigation is the determination that the disputed property is in fact Indian trust land. If that outcome is possible, then a state court is barred from assuming jurisdiction of the case.").

25. *See Heffle*, 633 P.2d at 269.

26. *See, e.g., Martin v. Secretary of Health & Human Servs.*, 62 F.3d 1403, 1407 (Fed.Cir.1995) ("Because the special master had no jurisdiction over the petition, there was no jurisdiction over the request for attorneys' fees and costs."); *Carpenter v. Discount Motors, Inc.*, 652 S.W.2d 716, 718 (Mo.App.1983) ("There having been a lack of jurisdiction over the subject matter, it necessarily follows that the trial court committed no error in failing to render a judgment for attorney fees.").

27. 727 P.2d 762, 763–65 (Alaska 1986).

only nominal attorney's fees. We disagree. Because the attorney's fees award was not "arbitrary, capricious, manifestly unreasonable, or improperly motivated," [28] we affirm it.

## IV. CONCLUSION

For these reasons, we AFFIRM the superior court's decision in all respects.

---

28. *Kellis,* 20 P.3d at 1113 (citations omitted).