James R. **SCHILLING**, Diane T. Schilling, Dr. S.H. Van Gorden and Walter Tibbitts, Plaintiffs,

v.

State of **WISCONSIN DEPARTMENT OF NATURAL RESOURCES**, the United States of America, acting through the Department of Interior, Bureau of Indian Affairs, and Lac Courte Oreilles Band of Lake Superior Chippewa Indians, Defendants.

No. 02–C–0573–C.

United States District Court,
W.D. Wisconsin.

Jan. 9, 2003.

Gordon K. Morris, for Plaintiffs.

Robert A. Selk, Assistant Attorney General, Leslie K. Herje, Assistant U.S. Attorney, Madison, WI, Kris Goodwill, Lac Courte Oreilles Band of Lake Superior Chippewa Indians, Hayward, WI, for Defendants.

## OPINION AND ORDER

CRABB, District Judge.

This is a civil action for declaratory relief in which plaintiffs seek judicial acknowledgment that they have a prescriptive easement (a 33–foot wide gravel road) that would allow plaintiffs Schilling and Van Gorden as well as their heirs and assigns to continue to gain access to their parcel of land from a nearby county highway. The gravel road at issue traverses land owned by defendant Wisconsin Department of Natural Resources and land that defendant United States holds in trust for defendant Lac Courte Oreilles Band of Lake Superior Chippewa Indians. Defendant State of Wisconsin Department of Natural Resources filed a counterclaim seeking a declaration that plaintiffs do not hold a prescriptive easement on the land in question.

Originally, plaintiffs filed this cause of action in the Circuit Court for Sawyer County, Wisconsin. Defendant United States removed this case to this court pursuant to 28 U.S.C. § 1442(a)(1), which allows removal of actions against the United States.

Presently before the court are defendants United States' and Lac Courte Oreilles' motions to dismiss on the basis of sovereign immunity. Because neither of these defendants has waived its sovereign immunity, their motions to dismiss will be granted. In addition, I decline to exercise supplemental jurisdiction over the remaining state law claims and, therefore, I will remand this case to state court.

For the sole purpose of deciding the present motions, plaintiffs' allegations in the complaint are accepted as true.

## ALLEGATIONS OF FACT

Plaintiffs James R. Schilling and Diane T. Schilling are the owners in fee simple of property located in Lot 7, Section 31, Township 40, Range 6 West, described as Lots 1 and 2 recorded in Volume 22 of Certified Survey No. 6155. Plaintiff S.H. Van Gorden is the owner in fee simple of property located in Lot 7, Section 31, Township 40, Range 6 West, described as Lots 3, 4 and 5 recorded in Volume 22 of Certified Survey No. 6155. Plaintiff Walter R. Tibbetts is the owner in fee simple of Lot 6, Section 31, Township 40, Range 6 West, except Lot 1, recorded in Volume 8 of Certified Survey No. 1718.

Plaintiffs' property is accessible by a gravel road that runs easterly from High-

way County CC through land owned by defendant Wisconsin Department of Natural Resources (identified as the Southeast Quarter and the Southeast Quarter of Southwest Quarter of Section 25, Township 40, Range 7 West) and land defendant United States holds in trust for defendant Lac Courte Oreilles Band of Lake Superior Chippewa Indians (identified as the South Half of Section 30, Township 40, Range 6 West). (Defendants refer to the property held by defendant United States in trust for defendant Lac Courte Oreilles as "Parcel A," the property owned by Wisconsin as "Parcel B" and the property owned by plaintiffs as "Parcel C." For simplicity, I will do the same.)

On November 19, 1984, Northern States Power Company conveyed Parcel A to "the United States of America in trust for the Lac Courte Oreilles Band of Lake Superior Chippewa Indians" by warranty deed. Before the conveyance, Parcel A had been private land since the U.S. patent and was never part of an Indian reservation.

For over 40 years plaintiffs and their predecessors in title have gained access to Parcel C by way of a gravel road that traverses Parcels A and B. Plaintiff's use of the gravel road has been open, adverse, continuous and exclusive. Plaintiffs have maintained the road continuously by grading it, adding gravel, clearing trees and brush and controlling erosion.

Additionally, plaintiffs have rights to use the gravel road pursuant to an express easement that Northern States Power granted to Patrick and Adele O'Halloran on September 23, 1986. (It is unclear how Northern States Power was able to grant an easement to the O'Hallorans after it had conveyed the property to defendant United States in trust for defendant Lac Courte Oreilles.)

## OPINION

### A. United States' Sovereign Immunity

■ The Quiet Title Act, 28 U.S.C. § 2409a, is the "exclusive means by which adverse claimants [can] challenge the United States' title to real property." *Leisnoi, Inc. v. United States*, 170 F.3d 1188, 1191 (9th Cir.1999) (brackets in original). It is undisputed that a prescriptive easement is an interest in real property. *See id.; see also Buckeye Pipe Line Co. v. Keating*, 229 F.2d 795, 798 (7th Cir.1956). Therefore, "when the United States has an interest in . . . disputed property, the waiver of sovereign immunity must be found, if at all, within the [Quiet Title Act]." *Alaska v. Babbitt*, 38 F.3d 1068, 1073 (9th Cir.1994).

■ It is well established that as a sovereign, the United States cannot be sued without the consent of Congress. *See Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *see also Macklin v. United States*, 300 F.3d 814, 820 (7th Cir.2002). However, the Quiet Title Act operates as a limited waiver of sovereign immunity for claims against the United States' title to real property. *See* 28 U.S.C. § 2409a(a); *see also Shawnee Trail Conservancy v. United States Dept. of Agriculture*, 222 F.3d 383, 386 (7th Cir.2000). The Act provides that "[t]he United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest" but that such a waiver "does not apply to trust or restricted Indian lands." 28 U.S.C. § 2409a(a). According to the Court of Appeals for the Ninth Circuit, for the Indian lands exception in § 2409a to apply, the United States need assert only a "colorable claim" that the land in question is held in trust for the Indians. *See Alaska v. Babbitt (Bryant)*, 182 F.3d 672, 675 (9th Cir.1999). Specifically, the "judicial inquiry [whether the

government's claim is colorable] extends no further than a 'determination that the government had some rationale,' and that its position 'was not taken in an arbitrary or frivolous manner.'" *Id.* (quoting *Alaska v. Babbitt (Albert)*, 38 F.3d 1068, 1076 (9th Cir.1994)).

Defendant United States contends that it has not waived its sovereign immunity with respect to plaintiffs' challenge to title to Parcel A, which it holds in trust for defendant Lac Courte Oreilles, an Indian tribe. Plaintiff asserts that "[t]he only evidence in this case for the proposition that trust Indian lands are involved is the 1984 conveyance from Northern States Power Co. to the United States, which purports to convey the lands in question 'in trust' for the Lac Courte Oreilles Band." Plt.'s Resp., dkt. # 16, at 3. However, this allegedly "purported" conveyance (which was recorded in the Register's Office in Sawyer County, Wisconsin, and placed in the records of the Bureau of Indian Affairs' Land Titles and Records Office in Aberdeen, South Dakota) is enough to establish that the United States has a colorable claim that it holds Parcel A in trust for defendant Lac Courte Oreilles. (It is interesting to note that in plaintiffs' complaint they do not refer to the conveyance as merely "purported.")

The Court of Appeals for the Ninth Circuit has held on more than one occasion that the "Indian lands sovereign immunity [exception] applies whether *the government is right or wrong*" as to its claim that the land is held in trust for the Indians. *Babbitt (Bryant)*, 182 F.3d at 675 (emphasis added); *see also Babbitt (Albert)*, 38 F.3d at 1076 ("The [Quiet Title Act's] limitations on actions · challenging the United States' assertions of title apply without regard to the ultimate validity of those assertions."). In fact, "[t]he very purpose of the doctrine is to prevent a

judicial examination of the merits of the government's position." *Wildman v. United States*, 827 F.2d 1306, 1309 (9th Cir.1987). The Supreme Court held that the § 2409a trust Indian lands exception "operates solely to retain the United States' immunity from suit by third parties challenging the United States' title to land held in trust for Indians." *United States v. Mottaz*, 476 U.S. 834, 842, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986); *see also Lane v. Pena*, 518 U.S. 187, 192, 116 S.Ct. 2092, 135 L.Ed.2d 486 (1996) (waiver of sovereign immunity is strictly construed in favor of sovereign). From the plain language of the statute as well as case law interpreting it, it appears that § 2409a is aimed at exactly this type of lawsuit.

In an attempt to circumvent the reach of § 2409a, plaintiffs argue in a conclusory manner that Parcel A is not land held in trust for defendant Lac Courte Oreilles. This argument is unpersuasive in light of the recorded conveyance in which Northern States Power conveyed Parcel A explicitly to "the United States of America in trust for the Lac Courte Oreilles Band of Lake Superior Chippewa Indians." Although plaintiffs assert that "the United States holds no interest in the lands other than a proprietary interest," Plt.'s Resp., dkt. # 16, at 4, it is unclear how the United States can hold "no interest" and "a proprietary interest" at the same time. *See generally Black's Law Dictionary* 816 (7th ed.1999) ("proprietary interest" defined as "interest held by a property owner together with all appurtenant rights"). In any event, plaintiffs' assertions do not defeat defendant United States' colorable claim that it holds Parcel A in trust for defendant Lac Courte Oreilles.

Plaintiffs argue that Wis. Stat. §§ 1.01 and 1.02 somehow play a role in the sovereign immunity analysis. This is a curious argument because it is not clear how these

statutes (or any state statute for that matter) could affect defendant United States' sovereign immunity. Moreover, plaintiffs fail to explain their position in any meaningful way. For example, it is not helpful to argue that "[t]hus in sec. 1.02, Wisconsin Statutes, the state has given the requisite consent to the United States for the acquisition of and exclusive federal jurisdiction over those types of acquisitions enumerated in s. 8, art. one of the U.S. constitution." Plt.'s Resp., dkt. # 16, at 4. In addition, plaintiffs seem to attempt to make something out of the fact that the land in the *Babbitt* cases was unpatented rather than patented. Thus, they argue, "where there is acquisition of fully patented land, and the state in question does not consent or cede its jurisdiction, sovereign immunity is waived." *Id.* at 7. This argument is unpersuasive for two obvious reasons. First, plaintiffs fail to cite any case law in support of their patented-unpatented distinction and I am aware of none. Second, § 2409a does not require either that Wisconsin cede its jurisdiction or that the land in question be patented.

Because defendant United States has not waived its sovereign immunity with respect to challenges to its title to Parcel A, which it holds in trust for defendant Lac Courte Oreilles, its motion to dismiss will be granted.

### B. *Lac Courte Oreilles' Sovereign Immunity*

Although it is unclear whether the court's finding that defendant United States enjoys immunity from suit necessarily prohibits suit against the trustee's ward, defendant Lac Courte Oreilles, *see Cherokee Nation v. Georgia,* 30 U.S. 1, 16, 5 Pet. 1, 8 L.Ed. 25 (1831) (trust relationship between Indians and United States "is marked by peculiar and cardinal distinctions which exist no where else"); *see also McClendon v. United States,* 885 F.2d 627, 629–33 (9th Cir.1989), it is unnecessary to determine this issue because the Lac Courte Oreilles tribe is independently immune from this lawsuit.

■ Like a waiver by the United States, an Indian tribe's waiver of sovereign immunity must be unequivocal. *See Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 59–60, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978) ("It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed.") (internal citation omitted); *United States v. United States Fidelity & Guaranty Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940) ("Indian Nations are exempt from suit without Congressional authorization"); *Puyallup Tribe, Inc. v. Department of Game of State of Washington,* 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977) ("[a]bsent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe") (citing *Fidelity & Guaranty,* 309 U.S. at 506, 60 S.Ct. 653). The Court of Appeals for the Ninth Circuit held that when the Supreme Court referred to both "waiver or consent" in *Puyallup,* 433 U.S. at 172, 97 S.Ct. 2616, it meant that a tribe can waive its immunity by consenting to suit. *See United States v. Oregon,* 657 F.2d 1009, 1013 (9th Cir.1981) ("We thus hold that Indian tribes may consent to suit without explicit Congressional authority.").

Plaintiffs repeat their unpersuasive argument that because Wisconsin has not consented to the acquisition of the land or ceded its jurisdiction, its lack of consent somehow operates as a waiver of defendant Lac Courte Oreilles' sovereign immunity. As stated earlier, this argument falls flat because plaintiffs fail to cite any case law or statute in support of this conclusion or explain how state actions can affect tribal sovereign immunity.

Plaintiffs argue alternatively that defendant Lac Courte Oreilles waived its immunity expressly by passing tribal resolution 02–52 on June 13, 2002, in which the tribal governing board "authorize[s] and direct[s] its officers to request the Bureau of Indian Affairs to take all legal action to prevent further occurrence of the infringement and trespass occasioned by the unlawful grading, placing fill in navigable waterway, trespass and related infringements" with respect to the gravel road at issue in this lawsuit, Aff. of David Farrar, dkt. # 7, at Exh. G, and that on June 5, 2002, the Bureau of Indian Affairs notified plaintiff Van Gorden that he owed $35,603.72 for the costs of his alleged timber trespass for clearing trees near the gravel road. The Bureau also informed plaintiff Van Gorden that he had 30 days to appeal its decision and that if he failed to pay the requested amount, the Bureau would ask the Department of Justice to initiate a lawsuit to collect the money.

Although this waiver argument is tempting because it suggests that the tribe was about to initiate action against the plaintiffs, in which case it would waive its immunity, the argument does not carry the day. The tribal resolution is not an *unequivocal* waiver of the tribes' sovereign immunity to jurisdiction in court. A "request" that the Bureau of Indian Affairs take action is not the same as the tribe's initiation of its own lawsuit. *See Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir.1994) (tribe's participation in administrative proceedings does not waive tribal immunity). If defendant Lac Courte Oreilles had initiated a lawsuit to collect the alleged $35,603.72, plaintiffs' argument might be on surer footing. *See American Indian Agricultural Credit Consortium, Inc. v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1380 n. 8 (8th Cir.1985) (if tribe initiates lawsuit, immunity bars only counterclaim in excess of original claim); *Che-*

*mehuevi Indian Tribe v. California State Bd. of Equalization*, 757 F.2d 1047, 1053 (9th Cir.1985) (no waiver of tribal sovereign immunity with respect to mandatory counterclaim), *rev'd on other grounds*, 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985) (per curiam); *United States v. Oregon*, 657 F.2d at 1015 ("By intervening, the Tribe assumed the risk that its position would not be accepted, and that the Tribe itself would be bound by an order it deemed adverse."). In other words, the initiation of a lawsuit limits the waiver "to the issues necessary to decide the action brought by the tribe." *McClendon v. United States*, 885 F.2d 627, 630 (9th Cir.1989) ("Initiation of a lawsuit necessarily establishes consent to the court's adjudication of the merits of that particular controversy."). Therefore, if defendant Lac Courte Oreilles had pursued collection of the alleged $35,603.72 in court, it *might* well be necessary to determine whether plaintiffs hold a prescriptive easement that would allow them to maintain the gravel road and, if that were the situation, defendant Lac Courte Oreilles could be waiving its sovereign immunity as to that issue. At this point, however, defendant Lac Courte Oreilles' tribal resolution does not expressly waive its sovereign immunity. Therefore, its motion to dismiss will be granted.

## C. *Remaining Claims*

Because only state law claims remain in this lawsuit among plaintiffs and defendant State of Wisconsin, I will remand this case to state court. Although the State of Wisconsin asserts in its counterclaim that this court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the state law claims, I decline to exercise that jurisdiction. *See Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir.1999) (district court has discretion to retain or refuse jurisdiction over state law claims).

ORDER

IT IS ORDERED that

1. Defendant United States' motion to dismiss is GRANTED;

2. Defendant Lac Courte Oreilles Band of Lake Superior Chippewa Indians' motion to dismiss is GRANTED;

3. Defendants United States and Lac Courte Oreilles shall be removed from the caption of this case; and

4. The clerk of court is directed to transmit the record to the Circuit Court for Sawyer County, Wisconsin.